HELMUTH KREHNKE ET AL., APPELLANTS, V. FARMERS UNION CO-OPERATIVE ASSOCIATION, A COOPERATIVE, APPELLEE, IMPLEADED WITH SAND CONSTRUCTION COMPANY, A CORPORATION, APPELLANT.

260 N. W. 2d 601

Filed December 21, 1977. No. 41246.

Nelson, Harding, Yeutter, Leonard & Tate, Kenneth Cobb, Scott E. Daniel, Richard P. Garden of Hutton & Garden, Cassem, Tierney, Adams & Gotsch, and Terry Grennan, for appellants.

Baylor, Evnen, Baylor, Curtiss & Grimit, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

In separate petitions filed in the District Court for Colfax County, plaintiffs Helmuth Krehnke and his wife Leola, alleged that Helmuth had suffered personal injuries and other damages proximately caused by the negligent failure of defendant Farmers Union Co-Operative Association to properly inspect and maintain an electric manlift in its grain elevator. Sand Construction Company, employer of Helmuth, was named an additional defendant for subrogation purposes. We shall hereinafter refer to Helmuth, one of the appellants herein, as plaintiff, and to Farmers Union Co-Operative Association, appellee, as defendant. Plaintiff specifically alleged that defendant's failure to properly inspect and maintain the lifting mechanism and safety brake of the manlift caused it to plummet to the bottom of its shaft when plaintiff was riding therein. Plaintiff prayed for special and general damages. Defend-

ant admitted that plaintiff had been injured in an accident in its manlift, but denied plaintiff's allegations of negligence, and alleged that his injuries were proximately caused or contributed to by the negligence of the plaintiff in a degree more than slight. Specifically, defendant alleged that plaintiff failed to inquire about or determine the lifting capacity of the manlift before operating it; and that plaintiff operated the manlift when he knew or should have known that it was loaded beyond its lifting capacity.

The case was submitted to a jury on both the plaintiff's allegations of negligence and defendant's allegations of contributory negligence. The jury entered a verdict in favor of the defendant. Judgment was entered on the verdict, and plaintiff has appealed to this court. Although plaintiff sets forth 15 assignments of error in his brief, the assignments fall into 4 categories which may be summarized as follows: (1) The trial court erred in submitting the issue of contributory negligence on the part of the plaintiff to the jury; or, in the alternative, failed to instruct the jury with adequate specificity as to a passenger's duty of care to check the lifting capacity of a manlift and to the loading on a manlift; (2) the trial court erred in failing to instruct the jury with adequate specificity in regard to plaintiff's allegations of negligence on the part of the defendant; (3) the trial court erroneously admitted into evidence the opinion testimony of a defense witness concerning the cause of the accident; and (4) the trial court should have directed a verdict in favor of the plaintiff and submitted only the issue of damages to the jury. We affirm the judgment of the District Court.

The facts relevant to this appeal are as follows. The manlift in question was installed in defendant's elevator approximately 20 years ago and, as its name implies, was primarily designed to carry workmen to the top of the grain elevator so that they

could direct grain into the appropriate part of the elevator. The car of the manlift consisted of a wire cage on three sides, the fourth side remaining open. The interior floor space of the cage was 2 feet square. It was an electric manlift, and the lifting mechanism was located at the top of the shaft. A counterweight was attached to the end of the cable which was used to raise and lower the manlift. The capacity of the manlift was estimated by plaintiff's expert witness to be about 300 pounds, but he also stated that it would take 171 pounds more than the weight of the plaintiff (235 pounds) and the weight of the cage itself (270 pounds) to cause the counterweight to slide, that is to say, to cause the manlift to be overloaded to the extent it would fall. The manlift had an automatic safety brake, which was activated by a rope and governor. If the manlift would begin to fall too rapidly, a clamp on the rope would cause "dogs" extending from the cage to catch or imbed themselves on wooden rails which were located on both sides of the manlift shaft.

Plaintiff was an employee of a construction company which was engaged to install certain equipment on the top of defendant's grain elevator. Plaintiff was an experienced workman in this field, and was familiar with grain elevators and their operation. He was also familiar with the operation of manlifts such as the one in this case. In carrying out the job at defendant's elevator, plaintiff regularly used the manlift to transport himself to the top of the grain elevator, although he apparently did not use the manlift to transport equipment and materials. Plaintiff acknowledged that the manlift worked properly prior to the accident.

On October 7, 1971, the installation on the elevator having been completed, plaintiff and a coworker were removing equipment from the top of the elevator. Plaintiff admittedly was using the manlift to take some equipment to the ground, and testified

that he placed one oxygen bottle and one acetylene bottle in the manlift, sent the manlift to the ground floor, and "yelled down" for someone to remove the two bottles. Plaintiff stated that the manlift returned to the top, the bottles were gone, and that he then entered the cage with a portable welder and a small box of tools. As he started to descend, plaintiff heard a loud pop, a screech, and then the manlift plummeted to the bottom of its shaft.

Ivan Backes, an owner of the company which employed the plaintiff, stated that just prior to the accident he had attempted to use the manlift to go to the top of the grain elevator, but that it had stopped after rising about 10 feet. Backes descended to the ground floor, and went outside to call to the plaintiff. Backes stated that he could not remember seeing oxygen or acetylene bottles on the manlift when he attempted to use it, or after the accident occurred. He also did not remember seeing anyone remove such bottles from the manlift.

Roger Morris, the manager of the defendant elevator company, stated that he saw Backes get on the manlift shortly before the accident, and that the oxygen and acetylene bottles were on the manlift at that time. When the manlift stopped after rising several feet with Backes and the bottles in it, Morris told Backes that there was too much weight on the manlift. Backes then returned to the ground, and Backes and Morris went outside to call to the plaintiff. Plaintiff's coworker replied that plaintiff was already on his way down. When Morris and Backes went back inside the grain elevator, the manlift cage was no longer on the ground floor, and the accident occurred shortly thereafter. Morris could not remember seeing the oxygen and acetylene bottles on the ground floor, and said no one removed them from the manlift.

An expert witness testifying for the plaintiff expressed the opinion that the accident was caused by

a bearing block shifting, which in turn caused gears controlling the manlift cable to become disengaged. He stated that a bolt, the purpose of which was to hold the block in place, was missing, and that two set screws designed to secure the bearing in place were not fulfilling that function. This expert also stated that the safety brake was not in proper condition, although his testimony was somewhat inconclusive on this point.

The defendant, on the other hand, presented evidence that the manlift had been periodically checked before the accident, that it had worked properly up to the time of the accident, and that it was designed only to lift people, not freight. Defendant's expert witness, over the plaintiff's objection of inadequate foundation, expressed the opinion that the accident was caused by the overloading of the manlift. There is testimony in the record that any damage or irregularity found in the lifting mechanism after the accident could have been caused by the counterweight rising and striking that mechanism as the manlift plunged to the ground due to overloading. Evidence was also introduced from which it could be inferred that the safety brake failed due to overloading, and not due to a defect in the brake itself.

Testimony of the witnesses indicated that the portable welder which was on the manlift at the time of the accident weighed approximately 80 pounds, and was 12 inches wide, 16 inches long, and 22 inches high. The tools weighed about 5 pounds and were in a box the size of a shoe box. The oxygen and acetylene bottles were approximately 8 to 10 inches in diameter, and weighed 125 and 90 pounds respectively. However, as indicated above, there was a dispute as to whether the bottles were on the manlift at the time of the accident. If the bottles were on the manlift at that time, it would have been overloaded by approximately 135 pounds.

It was admitted at trial that there was no capacity plate in the manlift, and that the plaintiff had not been advised of the capacity of the manlift. Plaintiff acknowledged that he had not inquired about the capacity of the manlift, and that he had not looked for a capacity plate in the manlift before using it.

Plaintiff first contends that there was insufficient competent evidence to sustain the trial court's submission of the issue of contributory negligence to the jury. Plaintiff specifically argues that he had no duty to determine the capacity of the manlift beyond that which was "open and obvious," and that the testimony of defendant's expert witness was not sufficient to sustain a finding that the accident was caused by overloading of the manlift.

The applicable law is that where contributory negligence is pleaded as a defense and there is no competent evidence to support it, it is prejudicial error to submit to the jury issues involving contributory and comparative negligence. Where, however, different minds may reasonably draw different conclusions or inferences from the evidence, or if there is a conflict therein, the issues of negligence and contributory negligence are for the jury. Oberhelman v. Blount, 196 Neb. 42, 241 N. W. 2d 355 (1976); § 25-1151, R. R. S. 1943. The questions of negligence and contributory negligence and the comparative measuring of them are basically factual issues which are generally for determination by the jury. C. C. Natvig's Sons, Inc. v. Summers, 198 Neb. 741, 255 N. W. 2d 272 (1977); Niemeyer v. Tichota, 190 Neb. 775, 212 N. W. 2d 557 (1973). One who is capable of undertanding and discretion, who fails to exercise ordinary care and prudence to avoid open, obvious defects and dangers, is negligent or contributorily negligent. Leary v. Martin K. Eby Constr. Co., Inc., 191 Neb. 575, 216 N. W. 2d 750 (1974). Negligence must be measured against the particular set of facts and circumstances which are

present in each case. Collins v. Herman Nut & Supply Co., 195 Neb. 665, 240 N. W. 2d 32 (1976).

In reviewing the evidence in its entirety, it appears that the evidence was sufficient to support the trial court's submission of the issue of contributory negligence to the jury. The evidence was sufficient to permit the jury to conclude that at the time of the accident the plaintiff was descending in the manlift with a portable welder, a box of tools, and oxygen and acetylene bottles. Even the testimony of plaintiff's witnesses indicated that if all these items were on the manlift, it was overloaded by at least 135 pounds. Although plaintiff argues that all these items, in addition to himself, would not have fit into the manlift cage at the same time, still it appears it was not a physical impossibility. The evidence clearly raised a factual question as to whether the manlift was overloaded at the time of the accident. Where there is a conflict in the evidence, this court will presume that the controverted facts were decided in favor of the successful party, and the judgment will not be disturbed unless it is clearly wrong. Buttner v. Omaha Public Power Dist., 193 Neb. 515, 227 N. W. 2d 862 (1975).

The evidence also appears to have been sufficient to permit the jury to conclude that the plaintiff, by overloading the manlift, failed to exercise ordinary care and prudence to avoid an open and obvious danger. See Leary v. Martin K. Eby Constr. Co., *supra*. Plaintiff was admittedly an expert with respect to grain elevator construction, and was familiar with manlifts of the type normally used in grain elevators. There was evidence from which it could be inferred that the plaintiff knew or should have known that the manlift was designed for people, not freight. There was further evidence that the plaintiff was in a hurry on the day in question because he was behind schedule. Under the particular circumstances of this case, the jury could have properly

concluded from the evidence presented that the loading of a small manlift with heavy equipment in addition to the weight of the plaintiff himself constituted a failure to exercise ordinary care and prudence to avoid an open and obvious danger. A person in plaintiff's particular situation is not, contrary to his contention, free to load a small manlift with heavy items and his own weight simply because no capacity plate is in the manlift. In using an elevator a person is required to exercise reasonable care for his own protection, and ordinarily the question of contributory negligence is for the jury. 26 Am. Jur. 2d, Elevators and Escalators, § 33, p. 505. See, also, Van Horn v. Cooper & Cole Bros., 88 Neb. 687, 130 N. W. 567 (1911). Under the facts of this case, it cannot be said as a matter of law that the plaintiff exercised ordinary care and prudence to avoid the open and obvious danger of overloading a small manlift not designed for freight. Therefore it appears that it was proper for the trial court to submit the issue of contributory negligence to the jury.

The plaintiff next contends that the trial court erred in failing to instruct the jury with adequate specificity regarding plaintiff's duty of care to determine the capacity of the manlift and in submitting defendant's allegations of contributory negligence. The proper method of presenting a case to a jury in its instructions is by a clear and concise statement by the trial court of the issues which find support in the evidence. Nebraska State Bank v. Dudley, 194 Neb. 1, 229 N. W. 2d 559 (1975). Instructions must be taken as a whole, and so long as the law on each specific issue is correctly stated and the jury is not misled by the instructions as a whole, prejudicial error may not be asserted. Duling v. Berryman, 193 Neb. 409, 227 N. W. 2d 584 (1975). "A party who desires an instruction on some particular question should request it. When the general charge fairly presents the case to the jury, error cannot be

predicated on a failure to instruct on some particular phase of the case unless a proper instruction has been requested by the party complaining." State v. Lynch, 196 Neb. 372, 243 N. W. 2d 62 (1976). Where instructions correctly state the law, it is not error for the court, in the absence of a request for a more specific instruction, to fail to give a more elaborate one. Fisher v. Gate City Steel Corp., 190 Neb. 699, 211 N. W. 2d 914 (1973); Rawlings v. Andersen, 195 Neb. 686, 240 N. W. 2d 568 (1976); White v. Longo, 190 Neb. 703, 212 N. W. 2d 84 (1973). Failure to object to instructions after they are submitted to counsel for review precludes raising an objection to the instructions on appeal. Omaha Home for Boys v. Stitt Constr. Co., Inc., 195 Neb. 422, 238 N. W. 2d 470 (1976); Moser v. Jeffrey, 194 Neb. 132, 231 N. W. 2d 106 (1975).

In the present case the trial court clearly and concisely instructed the jury with respect to both defendant's and plaintiff's allegations of negligence and contributory negligence. The trial court accurately advised the jury of the meaning of "negligence" and "ordinary care." Plaintiff did not request more specific instructions and did not object to the instructions given. The instructions were not erroneous or misleading, and adequately advised the jury of the issues raised by the pleadings which found support in the evidence. Since plaintiff did not request additional or more specific instructions, and did not object to the instructions given, his contentions are without merit.

Plaintiff contends that the trial court erred in admitting in evidence the opinion of defendant's expert witness as to the cause of the accident. This witness stated that the manlift plunged to the ground because it was overloaded, and he based this opinion on his examination of the manlifting mechanism and safety device. This witness stated that when he placed the cable of the manlift back on its pulley,

the gears worked properly and lifted the cage. Plaintiff objected to this testimony on the ground of inadequate foundation, the objection being primarily directed at the witness' alleged incomplete examination of all relevant factors, and lack of knowledge regarding the manlift. Plaintiff now argues that the opinion testimony should have been held inadmissible because there was no evidence that the condition of the manlift when the witness examined it was the same as its condition when the accident occurred.

It would appear that plaintiff's objections go not to the admissibility of the expert witness' testimony, but to its weight and credibility. See Duling v. Berryman, *supra*. The witness testified in regard to the facts upon which his opinion was based. He was subjected to thorough cross-examination, through which plaintiff brought to the attention of the jury the reasons he believed the witness' opinion to be erroneous. The jury was aware of the facts on which the witness relied, the condition of the manlift when the expert examined it, and the condition of the manlift when other witnesses examined it after the accident. We conclude that the trial court was correct in finding that there was an adequate foundation for the testimony, and the weight and credibility of that testimony were issues for the jury. See Duling v. Berryman, *supra*.

Plaintiff also contends that violations of the American National Safety Standard Code, adopted by the Nebraska Commissioner of Labor pursuant to section 48-418.12, R. R. S. 1943, constitute negligence per se, and that the trial court should have held the defendant negligent as a matter of law because the evidence showed that defendant had violated that code with respect to the manlift. Defendant contends that this code does not apply to manlifts in grain elevators.

It is questionable whether the code applies to manlifts such as the one in this case, and it may well be

argued that it does not. In 1965 the Legislature enacted L. B. 213, now sections 48-418 through 48-418.12, R. R. S. 1943. That act established a state elevator inspector and provisions for the inspection of certain elevators in Nebraska. Section 13 of the act, as amended, section 48-418.12, R. R. S. 1943, provides that the American National Standard Safety Code as published by the American Society of Mechanical Engineers may be adopted as a regulation by the Commissioner of Labor, and the Commissioner of Labor has adopted the code. Section 5 of the act, however, provides that the act shall not apply to elevators "used exclusively for agricultural purposes." See § 48-418.04, R. R. S. 1943. The legislative history of the act suggests that manlifts in grain elevators were not meant to be covered by the act. See the Labor Committee Statement regarding L. B. 213.

We need not, however, resolve the issue whether manlifts in grain elevators are covered by the safety code. It is the rule in Nebraska that the violation of a safety regulation, established by statute or ordinance, is not negligence as a matter of law, but is evidence of negligence which may be considered in connection with all the other evidence in the case in deciding that issue. Similarly, the violation of a statute is not negligence per se, but only evidence of negligence. See, Piper v. Hill, 185 Neb. 568, 177 N. W. 2d 509 (1970); Larsen v. Omaha Transit Co., 165 Neb. 530, 86 N. W. 2d 564 (1957); Armer v. Omaha & C. B. St. Ry. Co., 151 Neb. 431, 37 N. W. 2d 607 (1949). Therefore, even if the safety code in question does apply to manlifts, violation of the code would not constitute negligence per se, but only evidence of negligence. In the present case the jury was instructed, as requested by plaintiff, that violation of the code was evidence of negligence. Therefore plaintiff's contention that the trial court should have directed a verdict in his favor because violation of the code constituted negligence per se is without merit.

644

Finally, plaintiff contends that the trial court should have granted his motion for a directed verdict and submitted to the jury only the issue of damages. He cites the rule that where the facts adduced to sustain the issue of negligence are such that reasonable minds can draw but one conclusion therefrom, it is the trial court's duty to decide the question as a matter of law, rather than submit it to a jury for determination. Hoefer v. Marinan, 195 Neb. 477, 238 N. W. 2d 900 (1976). As previously indicated, in this case there was clearly a conflict in the evidence as to the cause of the accident and the negligence of each party. The evidence as to the issues of negligence and contributory negligence was not such that reasonable minds could draw but one conclusion therefrom. Therefore it was not only proper, but necessary, that the trial court submit the case to the jury. See Niemeyer v. Tichota, *supra.*

We have carefully reviewed the record and plaintiff's contentions, and find them to be without merit. Therefore the judgment of the District Court is affirmed.

AFFIRMED.